CHARLES E. FENNER AND VIRGINIA S. FENNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2216.   Promulgated December 14, 1926.

The amount of debts ascertained to be worthless and charged off within the year, and deductible from gross income, determined.

*E. Barrett Prettyman*, *Esq.*, and *Isom J. Guillory*, *Esq.*, for the petitioners.
*Henry Ravenel*, *Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income tax as follows:

Only a part of the deficiency for the year 1920 is in controversy and arises from the disallowance by the Commissioner of $62,370.28 of a total deduction for bad debts in the amount of $66,527.99, claimed on the income-tax return of Fenner & Beane, a partnership.

FINDINGS OF FACT.

The petitioners are husband and wife. During the calendar year 1920 Charles E. Fenner was a member of the partnership of Fenner

& Beane and had a one-half interest therein. This firm was engaged in the cotton brokerage business, with its home office in New Orleans, La. It had branch offices at New York City, at Dallas and Corsicana, Tex., and at several other small points. It also had 15 or 20 correspondents scattered throughout the south. The firm was a member of the New Orleans Cotton Exchange, the New York Cotton Exchange, the Chicago Board of Trade, the Liverpool Cotton Association, the New York Produce Exchange, and the New York Stock Exchange.

During the year 1920 it had approximately 1,200 active accounts, or customers, for whom it bought and sold cotton future contracts.

The firm had two classes of accounts: one in which the customers put up in advance cash or collateral as security for margins on the purchase or sale of future contracts, which were called " original margin accounts," and the other in which the firm executed the orders for contracts without security from the customers, which were called " credit accounts." The latter accounts were carried entirely on the credit of the customer, while on the " original margin accounts " the firm was secured only to the extent of the deposit made.

If the market dropped so that the margin or credit allowance of a customer was exceeded by the drop, the customer was notified to protect his order by the deposit of additional margin. If he failed to do this, the account was closed out by selling or buying for his account a corresponding amount of cotton for the same maturing date. The amount of the loss, if any, upon the transaction in excess of the margin deposit then stood as a debt owing by the customer to Fenner & Beane. The debts hereinafter referred to arose in this manner.

During 1920 there was a big drop in the price of cotton. Middling cotton sold for about 35 or 36 cents a pound in January and at 31½ cents in July, and dropped to 12½ cents in December. The result was that cotton merchants throughout the south who had cotton on hand found themselves in a failing condition, and banks were more or less involved, many of them having loaned money on cotton at 30 cents a pound. Many concerns and individuals went into bankruptcy. The whole south was seriously affected.

Fenner was the partner of the firm who opened accounts and extended credit to customers and attended to the collection of accounts. When the price of cotton dropped very precipitously in the fall of 1920, the partnership called for additional margins from customers whose accounts were not amply protected, and if the customers did not respond promptly their accounts were closed out. Statements were then sent to customers and demands were made for the amounts owed. In some instances drafts were drawn upon customers and the drafts were not paid. In other instances correspondents of the

firm made personal calls upon debtors and endeavored to collect accounts due. Many of the customers lived in States with anti-future laws, that is, laws which refused legal process for the collection of debts arising from dealings in cotton futures. The files of the partnership show the correspondence had with debtor customers. Near or at the close of 1920, Fenner went through these files and from information contained therein reached the conclusion that the accounts of thirty-eight customers, listed below, were worthless and ordered them charged off.

| Customer. | Charged off Dec. 31, 1920. | Amounts subsequently collected, to Dec. 31, 1924. | Paid. |
|---|---|---|---|
| W. J. Adams | $4,049.00 | | |
| R. B. Aiken | 285.54 | $285.54 | Feb. 17, 1921 |
| T. A. Ainsley | 600.00 | | |
| E. A. Adams | 1,086.46 | | |
| W. E. Broach | 9.76 | | |
| B. B. Butcher | 500.00 | | |
| J. Cavett | 254.52 | | |
| R. L. Cane | 267.48 | | |
| H. R. Chaddick | 5.04 | | |
| P. E. Dukes | 343.97 | | |
| C. S. Dunn | 34.22 | | |
| W. P. Edwards | 4,058.45 | | |
| N. B. Feagin | 386.10 | | |
| B. Galloway | 1.88 | | |
| J. P. Green | 625.69 | | |
| Garrett & Calhoun | 647.56 | | |
| J. F. Hodge | 848.34 | 848.34 | Jan. 5, 1921 |
| J. M. Howell | 90.40 | | |
| W. P. Hupp | 1.82 | | |
| Harlem Mfg. Co | 131.78 | | |
| Heyman, Jules | 250.00 | | |
| D. B. Jennings | 12,000.00 | 6,000.00 | Dec. 31, 1923 |
| N. L. Kelly, Sr | 2,764.37 | | |
| J. S. Leibman | 4,663.78 | 394.32 | Apr. 30, 1922 |
| Lockhart & Co | 1,867.09 | | |
| W. F. Leake | 150.70 | | |
| L. G. Moore & Co | 13,232.14 | | |
| W. H. O'Dowd, Jr | 608.00 | | |
| Alf. Page | 50.00 | | |
| H. H. Price | 296.36 | | |
| W. C. Pitner | 288.70 | | |
| H. J. Pitts | 217.25 | | |
| W. T. Slater | 500.00 | | |
| W. C. Taylor | 3,382.71 | | |
| W. B. Watson | 344.20 | | |
| E. T. Wicker | 5,593.22 | 150.00 | 1921 |
| W. A. Wilkins | 725.00 | | |
| F. E. Spier | 5,366.46 | 3,774.45 | |
| | 66,527.99 | 11,452.65 | |

B. B. Butcher, one of the debtors, resides at Clarksville, Tex., which was an anti-future State. Repeated efforts were made to collect the account by mail and calling on him in 1920, without effect. Attachment proceedings *in rem* were had against J. N. Wisner, garnishee, New Orleans, in 1921. These proceedings showed no funds. P. E. Dukes, another debtor, living in Branchville, S. C., sent a check in 1920 which proved to be worthless. The partnership solicited business from Dukes after December 31, 1920, and advised him that his new margins were not to be credited against his old account. The partnership hoped in this way to earn commis-

sions which would offset a part of the debt owed. N. B. Feagin, of Ennis, Tex., gave a note in 1920 which was due in November, 1920, but which was not paid. In 1921 he sent a note dated February 1, 1921, which also was not paid. J. P. Green, of Cooper, Tex., surrendered all his property to a bank in October, 1920. Drafts on him were returned unpaid. Garrett & Calhoun, of Augusta, Ga., were cotton merchants. They wrote in December, 1920, that they could not pay. They went into bankruptcy in the early part of 1921. In April, 1921, Fenner & Beane wrote them that they hoped they would work out some plan to get on their feet. D. B. Jennings, of Memphis, Tenn., did not live in an anti-future State. He was indebted to the partnership in the amount of $12,000. An effort was made by the partnership to collect this amount amicably, but without success. The account was placed in the hands of attorneys in February, 1921, who secured a confession of judgment from the debtor, which the attorneys agreed not to file within a certain period of time. The confession of judgment was in fact filed in 1923. The indebtedness of this customer was secured by a note which bore the endorsement of Wells and Gustafson, correspondents of Fenner & Beane, which correspondents lost practically everything they had in 1920. Subsequently, in 1922 or 1923, Wells made some money and has paid $6,000 upon the note guaranteed by him. N. L. Kelly, Sr., of Clinton, Tex., owed the partnership $2,764.37. Fenner & Beane accepted a note of this debtor dated October 23, 1920, which note became due in 1920, but which was not paid at maturity. The note was not secured. On January 3, 1921, the firm addressed a letter to an attorney in an attempt to determine whether the account was collectible. J. S. Leibman was a dentist living at Atlanta, Ga. He had no financial means, although his family had large means. The files of the partnership show that a letter was written with regard to this account on January 6, 1921, and subsequently a request was made for an investigation of the debtor. In 1921 a letter was received from one Cronheim, in which Cronheim stated that the debtor had had an interview with him and that he (Cronheim) was of the opinion that the partnership had no case. Lockhart & Co., of Pleasant, Tex., was a firm closely related to the firm of F. G. Moore & Co., of Greenville, S. C. This firm went into bankruptcy in 1921. L. G. Moore & Co., of Greenville, S. C., went into bankruptcy at the same time. H. H. Price, of Athens, Ga., was sued by the partnership in 1921 for the recovery of the debt owed by him. He successfully pleaded the anti-future law of that State. W. T. Slater, of Ennis, Tex., went into bankruptcy in May, 1921. E. T. Wicker, of Greenville, Tex., lost his property in 1920. His account was placed in the hands of an attorney, who early in 1921 advised that litigation would be useless. Late in 1920, or early in 1921, Wicker

made arrangements to pay $25 each month on the account. A total of $150 was collected through these monthly payments. F. E. Spier, of Dallas, Tex., became involved in 1920. Early in 1921 attachment proceedings *in rem* against John F. Clark & Co., garnishees, were brought, but nothing was collected. Spier's account had been secured by a correspondent of the partnership who became a guarantor of the account. The correspondent was in the employ of the petitioner at the close of 1920 and has remained in its employ to the present time. In 1922 the partnership compromised the account with the correspondent on the basis of 50 cents on the dollar.

The files of the partnership with respect to amounts owed by many of the smaller debtors were lost and Fenner could give no details regarding them. He knew, however, the financial condition of some of the debtors and knew that some debtors had lost their property in 1920. Attempts had been made to collect all the accounts in 1920, which attempts had failed, and from the evidence in the possession of Fenner at December 31, 1920, he ascertained the accounts to be worthless.

Early in 1921, Fenner & Beane, being in need of additional capital, interested one Norman, who agreed to become a partner and to invest a certain amount of money in the business. On January 31, 1921, thirty-five of the above accounts which had been charged off to profit and loss were restored to the books of account, and "profit and loss" was credited in the amount of $62,370.28. Three of the accounts charged off at the close of the year, namely, Alf Page, $50; W. C. Taylor, $3,382.71; and W. A. Wilkins, $725, were not restored to the books of account. The thirty-five accounts were restored to the books for the purpose of keeping them active before the partnership and also to enable Norman to judge of their possible value. On December 31, 1921, an entry was made on the books as of April 30, 1921, by which $6,732.32 of the uncollected accounts was charged to "Fenner & Beane in liquidation" and the balance, $54,353.08, to "Reserve for notes and accounts receivable."

For years prior and subsequent to 1920, Fenner & Beane have charged to "profit and loss" certain debts determined to be worthless; no question has ever been raised with respect to the correctness of the charge-off, and no amount claimed as a deduction for bad debts in income-tax returns has ever been disallowed by the Commissioner for any year except 1920. The debts charged off the books of account in 1920 in a total amount of $66,527.99, and disallowed by the Commissioner in the amount of $62,370.28, have not been claimed as deductions from gross income in subsequent partnership returns, and all amounts collected from those accounts in subsequent years have been returned as income in the year in which such collections were made.

Of the accounts charged off at December 31, 1920, only $11,452.65 had been collected up to December 31, 1924. Upon the account of J. S. Leibman, it was discovered subsequent to 1920 that Leibman had another account with the partnership not connected with dealings in cotton, in which there was a balance due Leibman of $394.32. This was applied against his account. The F. E. Spier account was guaranteed by one Morrow, a correspondent of the partnership. He was also indebted to the partnership as endorser in the amount of $10,000 or $12,000. The partnership comprised Morrow's indebtedness in 1922 or 1923 for $6,000, and $3,774.45 of that amount was credited to Spier's account.

The following accounts charged to profit and loss at December 31, 1920, were not ascertained to be worthless within the taxable year:

| | |
|---|---|
| D. B. Jennings | $12,000.00 |
| E. T. Wicker | 5,593.22 |
| F. E. Spier | 5,366.46 |

The balance of the accounts charged off at December 31, 1920, were ascertained to be worthless in the calendar year 1920.

OPINION.

SMITH: The question presented by this proceeding is whether the partnership of Fenner & Beane is entitled to deduct from gross income, in its partnership income-tax return for 1920, $62,370.28 for bad debts which were disallowed as a deduction by the Commissioner in the audit of the return. The provision of the Revenue Act of 1918 which is involved is section 214(a), reading:

That in computing net income there shall be allowed as deductions:

\*        \*        \*        \*        \*        \*        \*

(7) Debts ascertained to be worthless and charged off within the taxable year.

The evidence indicates that the partnership of Fenner & Beane attempted during the year 1920 to collect all delinquent accounts. Debtors were sent statements and bills for amounts owing by them, and in some cases drafts were drawn upon the debtors, which drafts were returned unpaid. In other cases the partnership determined through its correspondents the financial status of the debtor and the probability of payment. All but one of the debtors lived in States which had anti-future laws, which prevented the collection by legal proceedings of debts of the character of those owed to the partnership. The evidence shows that, after a careful consideration of these facts, the nature of the claims, and the attendant and surrounding circumstances, the partnership determined the accounts to be worthless and charged them off their books of account. We are satisfied that there was an actual ascertainment of worthlessness of all the

debts charged off with the exception of those owed by D. B. Jennings, E. R. Wicker, and F. E. Spier, in the aggregate amount of $22,959.68. The balance of the debts disallowed as deductions from gross income by the Commissioner, amounting to $39,410.60, were ascertained to be worthless at December 31, 1920.

There remains to be considered whether the accounts were "charged off" within the meaning of the statute, in view of the fact that they were charged back on the books in 1921. We are of the opinion that this reversal of the entries in the circumstances indicated does not affect the validity of the charge-off. They were charged back on the books merely for the purpose of keeping a record of them. See *Appeal of Huning Mercantile Co.*, 1 B. T. A. 130.

*Judgment will be entered on 15 days' notice, under Rule 50.*

VAN FOSSAN dissents.